**UNITED STATES of America,
Plaintiff,**

v.

**Kevin J. McMULLIN, Defendant.**

**No. CR07–4011–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Sept. 18, 2007.

Matthew Reed Metzgar, Rhinehart Law, Sioux City, IA, for Defendant.

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

## ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTIONS TO DISMISS

MARK W. BENNETT, District Judge.

### I. INTRODUCTION

#### A. Procedural Background

In an indictment returned on February 23, 2007, defendant Kevin J. McMullin is charged with conspiracy to manufacture and distribute 50 grams or more of pure methamphetamine, to distribute pseudoephedrine knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, to possess pseudoephedrine with intent to manufacture

methamphetamine, and to possess pseudoephedrine knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, after having previously being convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(c)(1), 841(c)(2), 846, and 851, manufacturing and attempting to manufacture 50 grams or more of pure methamphetamine, after having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851, possessing pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1), and possessing pseudoephedrine knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2).

On August 1, 2007, defendant McMullin filed two motions to dismiss. In one of his motions, defendant McMullin contends that the indictment should be dismissed for prejudicial pre-indictment delay ("motion to dismiss for pre-indictment delay"). In his other motion, defendant McMullin seeks dismissal of Count Four of the indictment on the basis that Counts Three and Four are duplicative, thereby constituting a double jeopardy violation ("motion to dismiss Count Four"). The government filed timely resistances to each of defendant McMullin's motions.

Defendant McMullin's motions to dismiss were referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). On August 28, 2007, Judge Zoss filed a Report and Recommendation in which he recommends that defendant McMullin's motions to dismiss both be denied. With respect to defendant McMullin's motion to dismiss for pre-indictment delay, Judge Zoss concluded that defendant McMullin had failed to meet his burden of proof to show that the delay resulted in actual and substantial prejudice to the presentation of his defense, and that the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. With respect to defendant McMullin's motion to dismiss Count Four, Judge Zoss concluded that possession of a listed chemical under subsection 841(c)(2) is a lesser included offense of possession of a listed chemical under subsection 841(c)(1). However, Judge Zoss further noted that this conclusion did not mandate dismissal of Count Four because the government may introduce evidence at trial that the pseudoephedrine possessed by defendant McMullin was purchased at two distinct times with two distinct intents. Accordingly, because the government may introduce evidence supporting both counts at trial, Judge Zoss recommended that defendant McMullin's motion to dismiss Count Four should be denied at this stage of the proceedings, without prejudice to its renewal, if appropriate, at the close of the evidence at trial.

Defendant McMullin has filed objections to Judge Zoss's Report and Recommendation with respect to his motion to dismiss the indictment. No party has filed any objections with respect to defendant McMullin's motion to dismiss Count Four of the indictment. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant McMullin's motions to dismiss.

### B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

The drug-related conduct underlying the charges against McMullin occurred between January 19 and June 7, 2002. The Indictment was handed down by the grand jury on February 23, 2007. In

the interim, counsel for the Government had several discussions with law enforcement officers concerning when, if at all, a federal prosecution would be initiated against McMullin. McMullin cites reports in the Government's discovery file indicating those types of discussions took place on April 3, July 1, and November 12, 2003; and January 23, 2004. According to McMullin, each of those reports indicates the Assistant United States Attorney told officers the matter would be prosecuted, and he was in the process of preparing a cooperation plea agreement for McMullin's codefendant, Timothy Wilson. McMullin states the January 2004 report also indicates the Assistant United States Attorney was interested in contacting McMullin's attorney to discuss the possibility of pre-indictment cooperation by McMullin. (*See* Doc. No. 33–1, ¶¶ 3–6) McMullin alleges, and the court will accept as true for purposes of his motion, that no attorney had been appointed to represent him pre-indictment, and apparently no contact occurred between the Government and McMullin, or any attorney on his behalf, prior to the date of the Indictment.

Report and Recommendation at pp. 1–2. Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. LEGAL ANALYSIS

### A. Standard Of Review

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED.R.CIV.P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir.1995) (also citing *Belk*). As noted above, defendant McMullin has filed objections to that portion of Judge Zoss's Report and Recommendation concerning his motion to dismiss for pre-indictment delay. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant McMullin's motions to dismiss.

### B. Motion To Dismiss Count Four

As the court noted above, no party has filed an objection to that part of Judge Zoss's Report and Recommendation concerning defendant McMullin's motion to dismiss Count Four of the indictment, and it appears to the court upon review of

Judge Zoss's findings and conclusions, that there is no ground to reject or modify them. Therefore, the court **accepts** that portion of Judge Zoss's Report and Recommendation and orders that defendant McMullin's motion to dismiss Count Four of the indictment is **denied without prejudice** to its renewal at the close of the evidence at trial.

### C. Motion To Dismiss For Pre–Indictment Delay

#### 1. Evidentiary hearing

■ Defendant McMullin initially objects that an evidentiary hearing was not held. The court notes that while Judge Zoss did not conduct an evidentiary hearing concerning defendant McMullin's motion to dismiss the indictment, Judge Zoss noted that the facts underlying this motion were undisputed. Report and Recommendation at 1. Moreover, Judge Zoss accepted defendant McMullin's allegations concerning the lack of the appointment of counsel pre-indictment as true for the purposes of his motion. Report and Recommendation at 2. Finally, the court notes that defendant McMullin has not indicated what additional putative facts he would have proven if an evidentiary hearing had been held. An evidentiary hearing on a motion need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of fact exist. *See United States v. Mims*, 812 F.2d 1068, 1073–74 (8th Cir.1987) (holding that "[w]hen a motion to suppress is filed, '[e]videntiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.' ") (internal citations and quotations omitted). Here, where defendant McMullin has not demonstrated the existence of disputed is-

sues of fact warranting an evidentiary hearing, the court concludes that Judge Zoss did not abuse his discretion in refusing to hold an evidentiary hearing. *See United States v. Harris*, 914 F.2d 927, 933 (7th Cir.1990) ("A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required.") (citation omitted). Accordingly, the court overrules this objection to Judge Zoss's Report and Recommendation.

#### 2. Merits of motion

Defendant McMullin also objects to Judge Zoss's conclusion that defendant McMullin failed to meet his burden of proof to show that the pre-indictment delay resulted in actual and substantial prejudice to the presentation of his defense, and that the government intentionally delayed his indictment either to gain a tactical advantage or to harass him.

■ Although the Due Process Clause of the United States Constitution affords protection against prejudicial pre-indictment delay, the statute of limitations provides the "primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir.2006); *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir.1999); *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir.), *cert. denied*, 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986). To establish a due process claim, a defendant bears the heavy, preliminary burden of demonstrating that: " '(1) the delay resulted in actual and substantial prejudice to the presentation of the defense; and (2) the government intentionally delayed his indictment either to gain a tactical advan-

tage or to harass him.'" *United States v. Haskell,* 468 F.3d 1064, 1070 (8th Cir.2006) (quoting *United States v. Sturdy,* 207 F.3d 448, 452 (8th Cir.2000)); *accord United States v. Gladney,* 474 F.3d 1027, 1030 (8th Cir.2007); *Jackson,* 446 F.3d at 849; *United States v. Grap,* 368 F.3d 824, 829 (8th Cir.2004); *see also Brockman,* 183 F.3d at 895; *United States v. Edwards,* 159 F.3d 1117, 1128 (8th Cir.1998), *cert. denied,* 528 U.S. 825, 120 S.Ct. 310, 145 L.Ed.2d 64 (1999); *United States v. Benshop,* 138 F.3d 1229, 1234 (8th Cir.1998); *United States v. McDougal,* 133 F.3d 1110, 1113 (8th Cir. 1998); *Bennett v. Lockhart,* 39 F.3d 848, 851 (8th Cir.1994), *cert. denied,* 514 U.S. 1018, 115 S.Ct. 1363, 131 L.Ed.2d 219 (1995); *United States v. Johnson,* 28 F.3d 1487, 1492 (8th Cir.1994), *cert. denied,* 513 U.S. 1098, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995); *United States v. Miller,* 20 F.3d 926, 931 (8th Cir.), *cert. denied,* 513 U.S. 886, 115 S.Ct. 226, 130 L.Ed.2d 152 (1994); *Bartlett,* 794 F.2d at 1289. As the Eighth Circuit Court of Appeals has observed:

> To prove actual prejudice, [a defendant] must specifically identify witnesses or documents lost during the delay properly attributable to the government, relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information was material to his defense, and show that the missing testimony or other evidence is not available from alternate sources.

*United States v. Al–Muqsit,* 191 F.3d 928, 938–40 (8th Cir.1999), *cert. denied,* 528 U.S. 1029, 120 S.Ct. 548, 145 L.Ed.2d 426 (1999), *vacated in part on other grounds, United States v. Logan,* 210 F.3d 820 (8th Cir.2000) (*en banc*); *accord Jackson,* 446 F.3d at 851; *Bennett,* 39 F.3d at 851; *Bartlett,* 794 F.2d at 1289–90. It is only after that threshold showing of actual prejudice has been made that a court must

inquire into the reasons for delay. *See Gladney,* 474 F.3d at 1030–31; *United States v. Sturdy,* 207 F.3d 448, 452 (8th Cir.2000); *Brockman,* 183 F.3d at 895; *Benshop,* 138 F.3d at 1234; *United States v. Savage,* 863 F.2d 595, 598 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989).

The allegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative or conclusory allegations will not suffice. *See Gladney,* 474 F.3d at 1031; *Jackson,* 446 F.3d at 851; *Brockman,* 183 F.3d at 895. Defendant McMullin's offering falls far short of that standard. Rather, defendant McMullin only speculates that if the charges had been brought at an earlier date, he could have cooperated with the government for the purposes of obtaining a reduction in sentence for substantial assistance given to the government. Defendant McMullin has provided the court with only vague and speculative assertions regarding the possibility of such a reduction in sentence. Indeed, defendant McMullin does not identify what assistance he could have provided the government with respect to any specific prosecution. Moreover, to the extent that defendant McMullin wished to be a cooperating witness, he was at all times free to contact the government and negotiate a compatible cooperation agreement with the government. Thus, the court concludes that defendant McMullin's allegations of prejudice resulting from the delay in bringing charges against him are simply too speculative to demonstrate actual prejudice. Accordingly, the court concludes that defendant McMullin has failed to establish actual and substantial prejudice based on pre-indictment delay. Therefore, this objection is also overruled.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of

the record, **accepts** Judge Zoss's Report and Recommendation and **denies without prejudice to its renewal at the close of the evidence** defendant McMullin's motion to dismiss Count Four of the indictment. The court also **denies** defendant McMullin's motion to dismiss for pre-indictment delay.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION ON PRETRIAL MOTIONS

PAUL A. ZOSS, Chief Magistrate Judge.

This matter is before the court on two motions filed by the defendant Kevin J. McMullin. On February 23, 2007, the defendants Timothy Lee Wilson and Kevin J. McMullin were charged in a four-count Indictment with conspiracy to manufacture and distribute methamphetamine, conspiracy to possess pseudoephedrine for the purpose of manufacturing methamphetamine, and possession of pseudoephedrine. (*See* Doc. No. 3) On August 1, 2007, McMullin filed a motion to dismiss the charges against him for untimely delay (Doc. No. 33), and a motion to dismiss Count Four of the Indictment on the basis that Counts Three and Four are duplicative, constituting a violation of his right against double jeopardy. (Doc. No. 35) The plaintiff (the "Government") resisted the motions on August 22, 2007. (Doc. Nos. 41 & 42).

Pursuant to the trial management order (Doc. No. 22), pretrial motions of this nature were referred to the undersigned for review and the filing of a recommended disposition. Accordingly, the court turns to consideration of McMullin's motions.

### MOTION TO DISMISS DUE TO UNTIMELY DELAY

The basic facts underlying this motion are undisputed. The drug-related conduct underlying the charges against McMullin occurred between January 19 and June 7, 2002. The Indictment was handed down by the grand jury on February 23, 2007. In the interim, counsel for the Government had several discussions with law enforcement officers concerning when, if at all, a federal prosecution would be initiated against McMullin. McMullin cites reports in the Government's discovery file indicating those types of discussions took place on April 3, July 1, and November 12, 2003; and January 23, 2004. According to McMullin, each of those reports indicates the Assistant United States Attorney told officers the matter would be prosecuted, and he was in the process of preparing a cooperation plea agreement for McMullin's codefendant, Timothy Wilson. McMullin states the January 2004 report also indicates the Assistant United States Attorney was interested in contacting McMullin's attorney to discuss the possibility of pre-indictment cooperation by McMullin. (*See* Doc. No. 33–1, ¶¶ 3–6) McMullin alleges, and the court will accept as true for purposes of his motion, that no attorney had been appointed to represent him pre-indictment, and apparently no contact occurred between the Government and McMullin, or any attorney on his behalf, prior to the date of the Indictment.

McMullin claims he has been prejudiced as a result of the delay in bringing charges against him, because if charges had been brought close in time to the underlying events, McMullin "could have cooperated with the United States Attorney's Office and law enforcement for purposes of obtaining Section 3553(e) relief and USSG 5k.1 relief." (Doc. No. 33–1, ¶ 8; Doc. No. 33–2, p. 2) McMullin alleges the Government delayed the Indictment intentionally for purposes of attempting to obtain McMullin's cooperation "by having an attorney appointed for him"—something that never occurred. (Doc. No. 33–2, p. 3)

The United States Supreme Court has discussed at length the hurdles a defendant must surmount to prevail on a motion to dismiss for pre-indictment delay, as well as the reasons for avoiding a requirement that the Government move too hastily to prosecution of suspected criminals. The Court's discussion in *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), is pertinent to the present motion:

> [S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide " 'the primary guarantee, against bringing overly stale criminal charges.' " [*United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) ], quoting *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). But we did acknowledge that the "statute of limitations does not fully define [defendants'] rights with respect to the events occurring prior to indictment," 404 U.S. at 324, 92 S.Ct. at 465, and that the Due Process Clause has a limited role to play in protecting against oppressive delay.

*Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048. *Accord United States v. Brockman,* 183 F.3d 891, 895 (8th Cir.1999) (quoting *Lovasco* ).

The Court noted a due process claim becomes "concrete and ripe for adjudication" upon the defendant's showing of actual prejudice; however, " '[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delays; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.' " *Lovasco,* 431 U.S. at 789–90, 97 S.Ct. at 2048–49 (quoting *Marion,* 404 U.S. at 324–25, 92 S.Ct. at 465). *See also United States v. Sturdy,* 207 F.3d 448, 452 (8th Cir.2000) ("The court will inquire into the reasons for delay only where actual prejudice has been established."); *United States*

*v. Singer,* 687 F.2d 1135, 1142–43 (8th Cir.1982) (defendant must show delay resulted in "actual prejudice not outweighed by the reasons for the delay"). In particular, the Court observed:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California,* 342 U.S. 165, 170, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), and which define "the community's sense of fair play and decency. . . ." [Citations omitted.]

*Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2049.

The Court held the interests of the defendant, the Government, the courts, and the public would not be served by compelling the Government to initiate a prosecution as soon as prosecutors have probable cause to believe an accused is guilty, or even once sufficient evidence has been developed to obtain a conviction. *Id.,* 431 U.S. at 790–95, 97 S.Ct. at 2049–51. The Court noted more information often is needed before a prosecutor can make a charging decision. *Id.,* 431 U.S. at 794, 97 S.Ct. at 2051. This is particularly true in a drug conspiracy case like the present one, where further investigation could

show a defendant's specific role in the conspiracy, rather than simply the fact that he was involved. Similarly, further investigation could show a defendant's role was less significant than prosecutors at first believed. *See id.* The Court expressed a reluctance to adopt a rule that "would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases." *Id.*

The Eighth Circuit Court of Appeals also has considered when dismissal is warranted for pre-indictment delay:

> The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay. *United States v. Sturdy,* 207 F.3d 448, 451–52 (8th Cir.2000). To establish unreasonable pre-indictment delay, a defendant must show that the delay resulted in actual and substantial prejudice to his defense, and that the government intentionally delayed the indictment to gain a tactical advantage or to harass him. *Id.* at 452.... If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay. *Id.*

*United States v. Sprouts,* 282 F.3d 1037, 1041 (8th Cir.2002). The Eighth Circuit has noted "a defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." *United States v. Jackson,* 446 F.3d 847, 849 (8th Cir.2006).

The statute of limitations for the offenses with which McMullin is charges is five years. *See* 18 U.S.C. § 3282. There is no question that the charges were brought against him within the applicable statute of limitations. Thus, to prevail on his motion, McMullin must carry the burden of proof on both elements; i.e., "that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. [Footnote omitted.]" *Jackson,* 446 F.3d at 849 (citing *United States v. Sturdy,* 207 F.3d 448, 452 (8th Cir.2000); *United States v. Grap,* 368 F.3d 824, 829 (8th Cir.2004); *Sprouts,* 282 F.3d at 1041).

McMullin has failed to carry his burden to prove either of these two elements. His "speculative or conclusory claims of possible prejudice as a result of the passage of time" cannot establish the type of actual prejudice necessary to warrant dismissal of the charges. *See United States v. Gladney,* 474 F.3d 1027, 1031 (8th Cir.2007) (citing *United States v. Sturdy,* 207 F.3d 448, 452 (8th Cir.2000)). Therefore, McMullin's motion to dismiss on the basis of pre-indictment delay should be denied.

## MOTION TO DISMISS COUNT FOUR DUE TO DOUBLE JEOPARDY

In this motion (Doc. No. 35), McMullin argues Counts 3 and 4 of the Indictment are duplicate charges, requiring proof of the same facts, and they therefore violate his Fifth Amendment right against double jeopardy.

Count 3 of the Indictment charges as follows:

> On or about June 6 through June 7, 2002, in the Northern District of Iowa, the defendants, TIMOTHY LEE WILSON and KEVIN J. McMULLIN, did knowingly and intentionally possess and aid and abet in the possession of pseudoephedrine, a List I chemical, with intent to manufacture methamphetamine, a Schedule II controlled substance.
>
> This was in violation of Title 21, United States Code, Section 841(c)(1), and Title 18, United States Code, Section 2.

(Doc. No. 3, p. 3)

Count 4 of the Indictment charges as follows:

On or about June 6 through June 7, 2002, in the Northern District of Iowa, the defendants, TIMOTHY LEE WILSON and KEVIN J. McMULLIN, did knowingly and intentionally possess and aid and abet in the possession of pseudoephedrine, a List I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, a Schedule II controlled substance.

This was in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

(Doc. No. 3, pp. 3–4)

McMullin notes the question of whether charges under subsections 841(c)(1) and 841(c)(2) are duplicative appears to be a matter of first impression in any federal court. Indeed, the court has been unable to locate a case addressing the issue from any circuit, and the parties have cited no authorities comparing the two statutes. However, a substantial body of case law exists addressing the proper analysis the court should employ in considering a double jeopardy argument.

■■■ "The Double Jeopardy Clause 'protects against multiple punishments for the same offense.'" *United States v. Ervasti*, 201 F.3d 1029, 1039 (8th Cir.2000) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). "'In order to support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense.'" *Id.* (quoting *United States v. Bennett*, 44 F.3d 1364, 1368 (8th Cir.1995)). Here, the court must determine whether the offenses set forth in subsections 841(c)(1) and 841(c)(2) are the same for purposes of double jeopardy.

As the Eighth Circuit Court of Appeals explained in *Ervasti:*

Our starting point in determining whether [the charged offenses] are the "same offense" for double jeopardy purposes is the same elements analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which provides: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180, 76 L.Ed. 306.

*Ervasti*, 201 F.3d at 1039.

The Supreme Court has summarized the *Blockburger* test as follows:

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 168–169, 97 S.Ct. 2221, 2226–2227, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (multiple punishment); *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) (successive prosecutions). The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). *See Lewis v. United States*, 523 U.S. 155, 177, 118 S.Ct. 1135, 1147, 140 L.Ed.2d 271 (1998) (Scalia, J. and Thomas J., concurring) ("Two offenses are different, for double jeopardy purposes, whenev-

er each contains an element that the other does not.... That test can be easily and mechanically applied, and has the virtue of producing consistent and predictable results.") (citing *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182). *See also McIntyre v. Caspari,* 35 F.3d 338, 340 (8th Cir.1994) ("[T]he Supreme Court has made clear that the *Blockburger* 'same-elements' test is the sole standard by which we must determine whether a subsequent prosecution violates the Double Jeopardy Clause." [Citations omitted.]).

Subsection 841(c)(1) requires proof of the following elements: (1) the defendant possessed a listed chemical; (2) possession of the chemical was knowing or intentional; and (3) the defendant intended to manufacture a controlled substance with the chemical. 21 U.S.C. § 841(c)(1). Subsection 841(c)(2) requires proof of the following elements: (1) the defendant possessed a listed chemical; (2) possession of the chemical was knowing or intentional; and (3) the defendant knew, or reasonably believed, that the chemical would be used to manufacture a controlled substance. 21 U.S.C. § 841(c)(2); *United States v. Beltz,* 385 F.3d 1158, 1162 (8th Cir.2004). Thus, the two subsections share two common elements; i.e., possession of a listed chemical, and that the possession of the chemical was knowing or intentional.

Where the two subsections differ is in the intent element. Subsection (c)(1) requires proof that the defendant possessed the chemical with the "intent to manufacture" a controlled substance—methamphetamine, in this case. In other words, the defendant, himself, intended to manufacture a controlled substance with the listed chemical. Subsection (c)(2) requires proof that the defendant either knew, or reasonably believed, that the chemical would be used to manufacture a controlled substance. To satisfy the intent element of subsection (c)(2), the defendant could have known or believed the listed chemical would be used *by someone else* to manufacture a controlled substance.

Nevertheless, McMullin argues that "[e]very violation of 21 U.S.C. Section 841(c)(2) [sic] is also a violation of 21 U.S.C. Section 841(c)(2)." (Doc. No. 35–2, p. 3) He states, "There is no difference between possessing pseudoephedrine with intent to manufacture methamphetamine and possessing pseudoephedrine knowing that it will be used to manufacture methamphetamine." (Doc. No. 35–1, ¶ 7) While it may be true that a violation of subsection (c)(1) automatically would violate subsection (c)(2), the reverse is not true. Possessing a listed chemical with the knowledge or reasonable belief that it will be used to manufacture a controlled substance differs from possession with the intent to manufacture a controlled substance. In the former case, the act of manufacturing the controlled substance could be accomplished by someone other than the person who possesses the chemical, as in the case of someone who obtains pseudoephedrine pills and supplies them to another who uses the pills to manufacture methamphetamine.

■ However, because a violation of subsection 841(c)(1) *ipso facto* constitutes a violation of subsection 841(c)(2), the court finds possession of a listed chemical under subsection 841(c)(2) is a lesser included offense of possession of a listed chemical under subsection 841(c)(1). The two subsections differ only in that subsection (c)(1) requires that the defendant intended to manufacture the controlled substance himself, rather than simply knowing or reasonably believing the substance would be used to manufacture a controlled substance. *See generally United States v. Carpenter,* 422 F.3d 738, 747 (8th Cir.2005) (finding offense of manufacturing methamphetamine to be lesser included offense of manufacturing within 1,000 feet of a

school); *United States v. Johnson,* 417 F.3d 990, 998 (8th Cir.2005) (finding offense of illegally tampering with an automobile by operation to be lesser included offense of automobile theft). Stated another way, in order to convict McMullin of violating subsection 841(c)(1), the jury must necessarily find that each element of subsection 841(c)(2) has been established; McMullin could not possess pseudoephedrine with the intent to manufacture methamphetamine absent the knowledge that the pseudoephedrine he possessed was intended to be used in manufacturing methamphetamine.

 This conclusion does not mandate dismissal of Count 4, however. The Government may introduce evidence at trial that the pseudoephedrine possession by McMullin on June 6–7, 2002, was purchased at two distinct times with two distinct intents—one purchase with the intent to use the pseudoephedrine to manufacture methamphetamine himself, and one purchase with the knowledge or belief that someone else was going to use the substance to manufacture methamphetamine. "While a defendant may be tried for lesser and greater offenses during the same trial, a judgment of conviction and punishment for both violates the double jeopardy clause." *Carpenter,* 422 F.3d at 747 (citing *United States v. Jelinek,* 57 F.3d 655, 660 (8th Cir.1995)). Thus, the Government may introduce evidence supporting both Counts at trial, and it will be the trial court's decision whether or not to submit both Counts to the jury. Accordingly, McMullin's motion to dismiss Count Four should be denied at this stage of the proceedings, without prejudice to its renewal, if appropriate, at the close of the evidence at trial.

## CONCLUSION

For the reasons set forth above, IT IS RESPECTFULLY RECOMMENDED that McMullin's motion to dismiss due to pre-indictment delay, and his motion to dismiss Count Four on the basis of double jeopardy, be denied. Any party who objects to this Report and Recommendation must serve and file specific, written objections by **September 5, 2007.** Any response to the objections must be served and filed by **September 10, 2007.**

**IT IS SO ORDERED.**

Aug. 28, 2007.